26

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL DEWAYNE COLEMAN,

Petitioner,

CASE NO. 03-CV-74880-DT

v.

JUDGE DENISE PAGE HOOD

MAGISTRATE JUDGE PAUL J. KOMIVES

HUGH WOLFENBARGER,

Respondent.
_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

| | | |
|---|---|---|
| I. | RECOMMENDATION | 2 |
| II. | REPORT | 2 |
| | A. Procedural History | 2 |
| | B. Factual Background Underlying Petitioner's Conviction | 3 |
| | C. Standard of Review | 5 |
| | D. Sufficiency of the Evidence (Claim I) | 8 |
| |    1. Clearly Established Law | 8 |
| |    2. Analysis | 10 |
| | E. Various Trial Errors (Claim II) | 12 |
| |    1. Loss of Evidence | 12 |
| |       a. Clearly Established Law | 13 |
| |       b. Analysis | 14 |
| |    2. Biased Trier of Fact | 14 |
| |       a. Clearly Established Law | 15 |
| |       b. Analysis | 16 |
| |    3. Denial of Confrontation | 18 |
| |       a. Clearly Established Law | 18 |
| |       b. Analysis | 19 |
| |    4. Cumulative Error | 20 |
| | F. Proportionality of Sentence (Claim III) | 21 |
| |    1. Clearly Established Law | 21 |
| |    2. Analysis | 24 |
| | G. Conclusion | 25 |
| III. | NOTICE TO PARTIES REGARDING OBJECTIONS | 25 |

1

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.     <u>REPORT</u>:

A.      *Procedural History*

1.      Petitioner Paul Dewayne Coleman is a state prisoner, currently confined at the Macomb Correctional Facility in New Haven, Michigan.

2.      On June 27, 2001, petitioner was convicted of one count of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, following a bench trial in the Wayne County Circuit Court.  On July 20, 2001, he was sentenced to a term of 6-15 years' imprisonment.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      THE COMPETENT EVIDENCE WAS NOT SUFFICIENT TO OVERCOME THE PRESUMPTION OF INNOCENCE

II.     AS A RESULT OF THE LOSS OF THE POLICE FILE AND PHOTOGRAPHS, THE BIAS OF THE TRIER OF FACT, INDICATED BY TWO ARRESTS OF THE DEFENDANT DURING THE TRIAL, AND THE JUDGE'S REFUSAL TO INSTRUCT THE COMPLAINANT TO ANSWER QUESTIONS DURING CROSS-EXAMINATION, THE DEFENDANT WAS DENIED DUE PROCESS OF LAW.

III.    WHILE THE MINIMUM SENTENCE IS WITHIN THE SENTENCE GUIDELINES, IT IS NOT PROPORTIONAL TO THE DEFENDANT, WHO SUFFERED A SEVERE BEATING AND PERCEIVED HIMSELF TO BE ACTING IN SELF-DEFENSE.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.  *See People v. Coleman*, No. 237033, 2003 WL 1455689 (Mich. Ct. App. Mar. 13, 2003) (per curiam).

4.     Petitioner sought leave to appeal these three issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Coleman*, 469 Mich. 880, 668 N.W.2d 149 (2003).

5.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on December 9, 2003.  As grounds for the writ of habeas corpus, he raises the three claims that he raised in the state courts.

6.     Respondent filed his answer on June 14, 2004.  He contends that petitioner's claims are either without merit or not cognizable on habeas review.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arose from a physical confrontation between petitioner and Jermaine Barnett, the son of petitioner's girlfriend.  Barnett testified that he lived in his mother's house with his girlfriend, two children, brother and mother, and that petitioner lived at the house as well.  *See* Waiver Trial Tr., dated 6/25/01, at 15-19.  On March 20, 2000, Barnett was driving his car in the neighborhood when he saw his mother and petitioner, each in separate cars, arguing with each other.  The three cars proceeded to the home, and Barnett parked in the driveway.  Petitioner and Barnett's mother got out of their cars and continued to argue.  Barnett approached petitioner and told him to "get out" of his mother's face.  Barnett and petitioner began "tussling," and Barnett eventually restrained petitioner.  The two had not punched each other, but had only pushed and shoved each other.  After Barnett released petitioner, petitioner went into the home.  Barnett stayed near his car, and told his girlfriend and children to get into the car.  Petitioner then came out of the house and asked Barnett, "why you hitting me?"  Barnett's sister, who was also present, yelled that petitioner had a knife.

3

Petitioner than stabbed Barnett in the chest. The blade broke of in Barnett's chest. Petitioner than struck Barnett in the face with the handle of the knife. Barnett was able to pull the knife blade from his chest. He than began hitting petitioner in the face. *See id.* at 24-37. Barnett testified that his mother drove him to the hospital, where he had 32 staples inserted in a five inch incision in his chest. *See id.* at 40-41.

Alma Moore, Barnett's girlfriend, testified next for the prosecution. Her testimony corroborated Barnett's testimony. *See id.* at 93-109. Sergeant Brian Bowser of the Detroit Police Department examined the scene and observed a blood trail leading from the front entry of the home to the front lawn. He found a broken knife blade and the handle laying in the grass. *See* Waiver Trial Tr., dated 6/26/01, at 11-15. Officer Jeffrey Stacho took a statement from Barnett in the hospital, in which Barnett told him the details of the altercation. *See id.* at 40.

Petitioner first presented the testimony of Wanda Barnett, his fiancé and Barnett's mother. Wanda Barnett testified that altercation began as described by Barnett. However, she also testified that Barnett threw the first punch, and hit petitioner a couple of times before petitioner went into the house. Her testimony concerning the stabbing by petitioner of Barnett, and the subsequent beating of petitioner by Barnett, also corroborated the testimony of Barnett. She did confirm, on cross-examination, that Barnett was by his car when petitioner came out of the house with the knife and that Barnett did not approach petitioner. *See id.* at 50-96.

Petitioner also testified on his own behalf. He testified that he asked Barnett to move his car out of the driveway, and when Barnett refused he asked Wanda Barnett to ask Barnett

4

to move the car.  Barnett than told petitioner to get out of his mother's face, and hit petitioner in the mouth without warning.  The blow knocked out some of petitioner's teeth.  Petitioner told Barnett to leave, but Barnett continued to beat him.  He grabbed the porch rail with his left hand, trying to escape and get into the house.  The railing came loose and they both fell to the ground.  Petitioner then got up and ran into the house.  *See id.* at 102-11.

Petitioner testified that Barnett continued to come after him once he was inside the house.  He saw the knife on a table, and picked it up because he was afraid Barnett would get it if he came into the house.  He intended to use the knife to force Barnett to leave.  Barnett swung at him and he stuck Barnett with the knife.  He did so only in response to Barnett's attack.  Barnett then continued to beat him for several minutes, until Barnett became tired.  *See id.* at 112-20.  After the altercation, petitioner went to the police station where he filed a complaint and was photographed.  The police never acted on his complaint.  While at the station, he blacked out and was taken by an ambulance to the hospital.  He later got a personal protection order against Barnett.  *See id.* at 121-28.  Petitioner testified that he attempted to obtain the photographs taken by the police numerous times, but that the police apparently lost all the information he gave them.  *See id.* at 129.

The trial judge, sitting as finder of fact, found that petitioner's conduct in stabbing Barnett with a knife in the chest demonstrated an intent to kill.  The judge therefore found defendant guilty of assault with intent to commit murder.  *See* Waiver Trial Tr., dated 6/27/01, at 21-22.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed

5

by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.

L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27

(1997). Amongst other amendments, the AEDPA amended the substantive standards for

granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent

meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also, Bell v. Cone*, 535 U.S. 685,

694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a

set of facts that are materially indistinguishable from a decision of [the Supreme] Court and

nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S.

12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also, Early v. Packer*,

537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of §

2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the

correct governing legal principle from [the Supreme] Court but unreasonably applies that

principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)

(quoting *Williams*, 529 U.S. at 413); *see also, Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also, Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also, Mitchell,* 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340

F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000);

*Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Sufficiency of the Evidence (Claim I)*

Petitioner first claims that the evidence was insufficient to establish his guilt beyond a

reasonable doubt.  The Court should conclude that petitioner is not entitled to habeas relief

on this claim.

1.      *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against

conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute

the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  Under the pre-

AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant

question is whether, after viewing the evidence in the light most favorable to the prosecution,

*any* rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences

from the record in favor of the prosecution.  *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir.

1992).  In determining the sufficiency of the evidence, the court must give circumstantial

evidence the same weight as direct evidence.  *See United States v. Farley*, 2 F.3d 645, 650 (6th

Cir. 1993).[1]  However, under the amended version of § 2254(d)(1) a federal habeas court must

---

[1]This same standard applies even though the trial judge, rather than a jury, sat as the trier
of fact.  *See United States v. Garcia*, 135 F.3d 951, 955 n.4 (5th Cir. 1998); *United States v.
Bashaw*, 982 F.2d 168, 171 (6th Cir. 1992).

apply a more deferential standard of review of the state court decision.  Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also, Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  Thus, "[a] federal court must look to state law to determine the elements of the crime."  *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

Under Michigan law, "[a]ny person who shall assault another with intent to commit the crime of murder, shall be guilty of a felony, punishable by imprisonment in the state prison for life or any number of years."  MICH. COMP. LAWS § 750.83.  To sustain a conviction under this statute, the prosecution must prove three elements: (1) an assault, (2) with an actual intent to kill, (3) which if successful would make the killing murder.  *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998); *Hoffman*, 225 Mich. App. at 111, 570 N.W.2d at 150.  *See generally, People v. Taylor*, 422 Mich. 554, 567, 375 N.W.2d 1, 7 (1985).  Further, intent to kill need not be proved by direct evidence, but rather may be proved by circumstantial evidence and reasonable inferences drawn from the evidence.  *See Warren*, 161 F.3d at 360; *Hoffman*, 225 Mich. App. at 111, 570 N.W.2d at 150.

9

2.    *Analysis*

Petitioner contends that the evidence was insufficient to prove the intent element of his

conviction.  Specifically, he argues that there is no evidence that he intended to kill Barnett,

and that the evidence demonstrated that he acted in self-defense.  The Michigan Court of

Appeals rejected petitioner's claim, explaining:

> Irrespective of the instigator of any assault or "tussling" that may have occurred,
> defendant entered the home and returned with a knife. Defendant could have
> used the telephone to call police, remained in the home to avoid any additional
> confrontation, or fled to his own car and driven away from the scene. Even
> defendant's companion, who attributed the initial assault to her son, noted that
> the complainant was preparing to leave the scene and was near his car. Instead,
> defendant came out of the home with a knife and stabbed the complainant.
> Other than defendant's own self-serving testimony, no other witness supported
> the theory that the complainant's "rage" caused him to run into the knife or that
> defendant utilized the knife in self-defense. The trial court rejected defendant's
> testimony that he utilized the knife in self-defense to cause the complainant to
> leave the property. This Court does not interfere with the trier of fact's
> determination of the credibility of the witnesses. Defendant's challenge to the
> sufficiency of the evidence is without merit.

*Coleman*, 2003 WL 1455689, at *1, slip op. at 2.  The Court should conclude that this

determination was reasonable.

Petitioner describes the testimony of Barnett and Moore as fabricated and self-

contradictory.  These inconsistencies and alleged credibility issues do not, however, call into

question the sufficiency of the evidence as a constitutional matter.  It is the job of the fact-

finder, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this

Court must presume that the fact-finder resolved those conflicts in favor of the prosecution.

*See Jackson*, 443 U.S. at 326; *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996);

*see also, United States v. Bailey*, 444 U.S. 394, 414-15 (1980) ("It is for [jurors] and not for

10

appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story.").

Further, the evidence at trial was sufficient to establish beyond a reasonable doubt petitioner's intent to kill. As noted above, intent to kill need not be proved by direct evidence, but rather may be proved by circumstantial evidence and reasonable inferences drawn from the evidence. *See Warren*, 161 F.3d at 360; *Hoffman*, 225 Mich. App. at 111, 570 N.W.2d at 150. Here, the trial judge could infer intent beyond a reasonable doubt based on petitioner's plunging an inherently deadly weapon–the knife–into the chest of the victim. *See People v. Small*, No. 224913, 2001 WL 1320323, at *3 (Mich. Ct. App. Oct. 26, 2001); *cf. People v. Harris*, 458 Mich. 310, 314, 583 N.W.2d 680, 682 (1998).

This conclusion is not altered by petitioner's claim of self-defense. Self-defense is available under Michigan law only if the defendant honestly and reasonably believes both (1) that he is in imminent danger of death or great bodily harm, and (2) that it is necessary for him to exercise deadly force. *See People v. Riddle*, 467 Mich. 116, 119, 649 N.W.2d 30, 34 (2002). Here, there was sufficient evidence to negate both of these elements. With the exception of petitioner, all of the witnesses, including petitioner's own witness, testified that after the initial altercation petitioner had retreated to the home and Barnett had remained outside near his car, preparing to leave. At this point, as Wanda Barnett testified, the altercation appeared to be over. Thus, petitioner could not have reasonably believed that he was, at that point, in imminent danger. Further, he could not have believed that it was necessary to use such force. As the *Riddle* court explained, "[t]he necessity element of self-defense normally requires that the actor try to avoid the use of deadly force if he can safely and reasonably do so, for example

11

by applying nondeadly force or by utilizing an obvious and safe avenue of retreat." *Riddle*, 467
Mich. at 119, 649 N.W.2d at 34. Petitioner, having successfully retreated, was not entitled to
return to the scene and renew the confrontation and then claim self-defense, regardless of who
was the initial aggressor. *See People v. Walters*, 223 Mich. 676, 682-83, 194 N.W. 538, 540
(1923) ("A killing is not justifiable on the ground of self-defense if the defendant, after a
difficulty between the deceased and himself had terminated, or after he had had an opportunity
to decline combat, continued the struggle or renewed the affray, the result of which was the
homicide; and that is the rule, irrespective of who was at fault in the original encounter."), *cited
with approval by Riddle*, 467 Mich. at 127 n.19, 649 N.W.2d at 39 n.19.

Thus, the Michigan Court of Appeals reasonably could have concluded that there was
sufficient circumstantial evidence to both establish intent to kill and negate any claim of self-
defense beyond a reasonable doubt. Accordingly, the Court should conclude that petitioner
is not entitled to habeas relief on this claim.

E.    *Various Trial Errors (Claim II)*

Petitioner next contends that he was denied a fair trial by the cumulative effect of
various trial errors. The Court should conclude that each of the alleged errors did not result
in a constitutional violation, and thus that petitioner is not entitled to habeas relief on this
claim.

1.    *Loss of Evidence*

Petitioner first contends that he was denied a fair trial when the police failed to provide
him the pictures they had taken of him following the assault. The Court should conclude that
petitioner is not entitled to habeas relief on this claim.

12

*a.  Clearly Established Law*

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held "that the suppression

by the prosecution of evidence favorable to an accused upon request violates due process

where the evidence is material either to guilt or to punishment, irrespective of the good faith

or bad faith of the prosecution."  *Id.* at 87.  However, "there is no general constitutional right

to discovery in a criminal case, and *Brady* did not create one."  *Weatherford v. Bursey*, 429

U.S. 545, 559 (1977).  Thus, in order to establish a *Brady* violation, petitioner must show that

the prosecutor withheld evidence  which was both (1) favorable to the accused and (2) material

to guilt or punishment.  *See United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988).

Furthermore, regardless of the exculpatory nature or materiality of the evidence withheld by

the prosecution, "[n]o *Brady* violation exists where a defendant knew or should have known the

essential facts permitting him to take advantage of any exculpatory information, or where the

evidence is available to defendant from another source."  *United States v. Clark*, 928 F.2d 733,

738 (6th Cir. 1991) (citations omitted) (internal quotation omitted); *accord United States v.*

*Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994).  Thus, petitioner's claim raises three questions:

(1) Was the evidence suppressed by the prosecution in that it was not known to petitioner and

not available from another source?; (2) Is the evidence favorable or exculpatory?; and (3) Is the

evidence material to the question of petitioner's guilt?  *See Carter v. Bell*, 218 F.3d 581, 601

(6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also, Strickler*

*v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972).

Petitioner bears the burden of establishing each of these three elements.  *See Carter*, 218 F.3d

at 601.  If all three of these questions are answered in the affirmative with respect to the

allegedly suppressed evidence, petitioner has established a constitutional error entitling him to the writ of habeas corpus, and "there is no need for further harmless-error review." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). If, one the other hand, any of these questions is answered in the negative, then petitioner has failed to establish a *Brady* violation.

### b. Analysis

Here, the photos which were taken were part of a separate criminal complaint filed by petitioner against Barnett, and thus were not part of the prosecutor's file in this case. The officer in charge searched the other case file and found petitioner's cross-complaint, but was unable to find the photos. *See* Waiver Trial Tr., dated 6/25/01, at 9-11. Based on this fact, and petitioner's failure to claim that the photos were intentionally lost or destroyed, the Michigan Court of Appeals rejected petitioner's claim. *See Coleman*, 2003 WL 1455689, at *2, slip op. at 2. The Court should conclude that this determination was reasonable.

While the good or bad faith of the prosecutor is generally irrelevant to a suppression claim, a different rule applies when the evidence sought has been lost or destroyed. In such a case, petitioner must show that the evidence was destroyed in bad faith. *See Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988); *California v. Trombetta*, 467 U.S. 479, 488 (1984). Petitioner has put forth no allegation, much less evidence, that the photographs were not in fact lost, or that they were deliberately lost in bad faith. He thus cannot succeed on this claim, and the Michigan Court of Appeals's rejection of the claim was reasonable.

2.    *Biased Trier of Fact*

Petitioner next claims that the trial judge, who sat as the trier of fact, was biased against him.

14

a. *Clearly Established Law*

Perhaps "[n]o right is more fundamental to the notion of a fair trial than the right to an impartial judge." *Bracy v. Gramley*, 81 F.3d 684, 696 (7th Cir. 1996) (Rovner, J., dissenting), *rev'd*, 520 U.S. 899 (1997); *see also*, MASS. CONST. of 1780, pt. 1, art. 29; Thus, "the Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy*, 520 U.S. at 904-05 (citation omitted) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)).  "Because judicial bias infects the entire trial process it is not subject to harmless error review." *Maurino v. Johnson*, 210 F.3d 638, 645 (6th Cir. 2000) (citing *Chapman v. California*, 386 U.S. 18, 23 & n. 8 (1966)); *see also*, *Rose v. Clark*, 478 U.S. 570, 577 (1986) (citing *Tumey v. Ohio*, 273 U.S. 510 (1927)).

As a general matter, habeas relief will be appropriate only upon a showing that the trial judge was actually biased or prejudiced against the petitioner. *See Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir. 1994).  However, in exceptional circumstances "the likelihood of bias or appearance of bias can, in certain circumstances, be so substantial as to create a conclusive presumption of actual bias." *Id.* (internal quotation omitted).  The appearance of bias situation is limited to cases in which "a judge is faced with circumstances that present some actual incentive to find one way or the other[,]" *id.* (internal quotation omitted); *see also*, *Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1372 (7th Cir. 1994) (en banc), such as where the judge has a pecuniary interest in the outcome or has been the target of repeated abuse by one of the parties. *See Six v. Delo*, 885 F. Supp. 1265, 1271 (E.D. Mo. 1995), *aff'd*, 94 F.3d 469, 478 (8th Cir. 1996).

As the Supreme Court has noted in the context of the federal recusal statute, "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see also*, *Liteky v. United States*, 510 U.S. 540, 549-51 (1994); *Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir. 1988). For this reason,

> judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved.

*Liteky*, 510 U.S. at 555. Thus, "[a] judge's ordinary efforts at courtroom administration–even a stern and short-tempered judge's ordinary efforts at courtroom administration–remain immune." *Id.* at 556. Although *Liteky* was decided on the basis of the federal recusal statute, it provides guidance for resolving habeas claims of judicial bias. *See Maurino*, 210 F.3d at 645; *Poland v. Stewart*, 117 F.3d 1094, 1103-04 (9th Cir. 1997).

### b. Analysis

Petitioner contends that the trial judge's bias is demonstrated by the fact that the trial judge indicated that he was unhappy with petitioner for delaying the first day of trial and, after later delays caused by petitioner, revoked petitioner's bond. Petitioner also argues that his arrest in front of the judge on an outstanding warrant in an unrelated matter poisoned the judge's mind against him. The Michigan Court of Appeals rejected petitioner's claim, reasoning that the judge's comments were insufficient to support a finding of bias, that the

16

bond was properly revoked, and that there was no evidence that the judge had any role in the arrest of defendant on an outstanding bench warrant. *See Coleman*, 2003 WL 1455689, at *2, slip op. at 2-3. The Court should conclude that this determination was reasonable.

The judge's admonishment of petitioner for delaying the proceedings and his eventual revocation of petitioner's bond do not support a finding of bias. As noted above, judicial rulings alone almost never demonstrate bias, and nothing in the judge's decision evidences a degree of favoritism for the prosecution or bias against petitioner. *See Liteky*, 510 U.S. at 555. Further, the judge's admonishment of petitioner was an "ordinary effort[] at courtroom administration," and thus does not demonstrate bias. *Id.* at 556; *see United States v. Anderson*, 577 F.2d 258, 260 (5th Cir. 1978) (judge's admonishment of defendant at start of trial that he would not tolerate delaying tactics did not demonstrate bias); *United States ex rel. Boone v. Page*, No. 97 C 3160, 2000 WL 1100335, at *4 (N.D. Ill. Aug. 4, 2000) (judge's revocation of bond did not demonstrate bias); *United States v. Doby*, 648 F. Supp. 1119, 1122 (N.D. Ind. 1986) (same).

Likewise, the arrest of petitioner on an unrelated, outstanding bench warrant cannot demonstrate bias. As the Michigan Court of Appeals noted, there is no evidence that the trial judge had any role in this arrest. *See* Waiver Trial Tr., dated 6/25/01, at 10-11 (trial judge adjourning trial and advising petitioner to be on time when court reconvened; officer informs judge that petitioner "has an outstanding warrant. He'll be taken into custody now anyway."). Because the judge had no role in the arrest, the arrest cannot demonstrate the judge's bias. Nor can petitioner show that he was prejudiced by the arrest in front of the judge. "In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when

17

making decisions." *Harris v. Rivera*, 454 U.S. 339, 346 (1981).  There is no evidence that petitioner's arrest impacted the trial judge's verdict in any way, and thus petitioner cannot show that he was prejudiced by the arrest.  *See United States v. McCarthy*, 470 F.2d 222, 224 (6th Cir. 1972) (no prejudice from introduction of inadmissible prior crimes evidence in bench trial where there was no evidence that the prior crimes information affected the trial judge's verdict); *Cooey v. Anderson*, 988 F. Supp. 1066, 1095 (N.D. Ohio 1997), *aff'd sub nom. Cooey v. Coyle*, 289 F.3d 882 (6th Cir. 2002).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

      3.   *Denial of Confrontation*

Petitioner next contends that he was denied his right to cross-examine the witnesses against him.  At two points during counsel's cross-examination of Barnett, counsel asked that Barnett's answers be stricken as non responsive or that the witness be instructed to answer the questions posed.   The trial judge generally responded by telling counsel to rephrase his questions. *See* Waiver Trial Tr., dated 6/25/01, at 55-56, 63.  Petitioner contends that the trial court's refusal to control Barnett and require him to ask the questions posed violated his right to cross-examine Barnett.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

      *a. Clearly Established Law*

The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI.  The Confrontation Clause is applicable to the states through the 14th Amendment's Due Process Clause. *Pointer v. Texas*, 480 U.S. 400, 406 (1965). The Supreme

18

Court's "Confrontation Clause cases fall into two broad categories: cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination." *Delaware v. Fensterer*, 474 U.S. 15, 18 (1985) (per curiam). The latter category, which is implicated in petitioner's claims, recognizes that "[c]onfrontation means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315 (1974). Thus, in cases where the trial court has restricted cross-examination in some manner, "the Court has recognized that Confrontation Clause questions will arise because such restrictions may 'effectively . . . emasculate the right of cross-examination itself.'" *Fensterer*, 474 U.S. at 19 (quoting *Smith v. Illinois*, 390 U.S. 129, 131 (1968)).

However, the Supreme Court has also explained that the Confrontation Clause does not "guarantee cross-examination that is effective in whatever way and to whatever extent the defense might wish." *Fensterer*, 474 U.S. at 20. The question is whether the trial court's ruling allowed for "substantial compliance with the purposes behind the confrontation requirement," or, put another way, whether petitioner was "significantly limited in any way in the scope or nature of his cross-examination." *Green*, 399 U.S. at 166. Thus, "[s]o long as cross-examination elicits adequate information to allow a jury to assess a witness's credibility, motives, or possible bias, the Sixth Amendment is not compromised by a limitation on cross-examination." *United States v. Cueto*, 151 F.3d 620, 638 (7th Cir. 1998); *see also*, *United States v. Larranaga*, 787 F.2d 489, 498 (10th Cir. 1986).

### b. Analysis

Petitioner cannot establish that he was denied his right to confront Barnett. Counsel

extensively cross-examined Barnett regarding the circumstances of the altercation between Barnett and petitioner. Although counsel was unhappy with Barnett's response to two questions, and asked the court to require Barnett to provide a concise answer, counsel was permitted to rephrase his questions and eventually secured answers to the questions he was asking. The trial court's failure to put a tighter leash on the witness did not in any way "significantly limit[] . . . the scope or nature of [counsel's] cross-examination." *Green*, 399 U.S. at 166. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.[2]

4.    *Cumulative Error*

Petitioner also contends that the cumulative effect of the failure to locate the photos, the judge's bias, and the failure to control Barnett's answers deprived him of a fair trial. The Court should conclude that petitioner is not entitled to habeas relief on this basis. It is true that "[e]rrors which standing alone may be deemed harmless or insufficiently prejudicial to amount to a denial of due process may cumulatively produce a trial setting which is fundamentally unfair." *Payne v. Janasz*, 711 F.2d 1305, 1316 (6th Cir. 1983) (Jones, J., dissenting); *accord Walker v. Engle*, 703 F.2d 959, 968 (6th Cir. 1983). This rule, however, applies only to

---

[2]Petitioner also contends that the trial judge's failure to control Barnett and his answers violated Michigan Rule of Evidence 611, which requires a court to exercise control over the mode of interrogating witnesses. However, it is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). Thus, any claim based on Rule 611 does not provide a basis for habeas corpus relief.

constitutional errors; the accumulation of non-errors cannot collectively amount to a violation

of due process. *See Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002); *United States v.*

*Lumpkin*, 192 F.3d 280, 290 (2d Cir. 1999); *McKinnon v. Ohio*, No. 94-4256, 1995 WL

570918, at *12 (6th Cir. Sept. 27, 1995); *Fero v. Kerby*, 39 F.3d 1462, 1475 (10th Cir. 1994).

As discussed above, none of petitioner's claims establish constitutional error, and thus his

cumulative error claim fails.

F.      *Proportionality of Sentence (Claim III)*

Finally, petitioner contends that his sentence was disproportionate to his offense and

the circumstances surrounding the offense.  The Court should conclude that petitioner is not

entitled to habeas relief on this claim.

1.      *Clearly Established Law*

In *Solem v. Helm*, 463 U.S. 277 (1983), the Supreme Court held that the Eighth

Amendment requires that "a criminal sentence must be proportionate to the crime for which

the defendant has been convicted."   *Id.* at 290.   In considering whether a sentence is

proportionate, the Court identified three objective factors which are relevant: "(I) the gravity of

the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in

the same jurisdiction; and (iii) the sentences imposed for the same crime in other jurisdictions."

*Id.* at 292.  Applying this test to the facts before it, the Court found that the defendant's

sentence of life imprisonment without possibility of parole under a habitual offender statute was

disproportionate where the three underlying felonies were nonviolent crimes involving small

sums of money, the final felony being for uttering a false check.  *See id.* at 303.

However, the reach of *Solem* has been limited by the Supreme Court's more recent

21

decision in *Harmelin v. Michigan*, 501 U.S. 957 (1991). In *Harmelin*, the Court held that Michigan's mandatory sentence of life imprisonment for possession of over 650 grams of a controlled substance did not violate the Eighth Amendment. Justice Scalia, joined by Chief Justice Rehnquist, reasoned that *Solem* was wrongly decided and should be overruled, and concluded that the Eighth Amendment contains no proportionality requirement outside the capital punishment context. *See Harmelin*, 501 U.S. at 965 (Scalia, J.). Justice Kennedy, joined by Justices O'Connor and Souter, concluded that the Eighth Amendment contains a very narrow proportionality principle, which prohibits only those punishments which are "grossly" disproportionate to the crime. *See id.* at 1001 (Kennedy, J.). Further, Justice Kennedy's opinion distinguished *Solem*, essentially limiting application of the *Solem* objective criteria test to the facts in that case. *See id.* at 1001-05. Specifically, Justice Kennedy concluded that the objective analysis required in *Solem* is "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* at 1005.[3] Thus, it is unclear whether, and to what extent, *Solem* remains good law. *See McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992) ("By applying a head-count analysis, we find that seven members of the Court supported a continued Eighth Amendment guaranty against disproportional sentences. Only four justices, however, supported the continued application of all three factors in *Solem*, and five justices rejected it. Thus, this much is clear: disproportionality survives; *Solem* does not.").

---

[3]Justices White, Blackmun, Stevens, and Marshall all concluded that *Solem* should be upheld, and the three-factor test applied to the sentencing scheme at issue. *See Harmelin*, 501 U.S. at 1016 (White, J., dissenting).

22

As the Sixth Circuit has summarized,

> although only two Justices [Rehnquist and Scalia] would have held that the
> eighth amendment has no proportionality requirement, five Justices [Kennedy,
> O'Connor, and Souter, along with Rehnquist and Scalia] agree that there is no
> requirement of strict proportionality.

*United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991).  At most, then, the Eighth

Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime."

*Harmelin*, 501 U.S. at 1001; *Hopper*, 941 F.2d at 422 ("the eighth amendment is offended

only by an extreme disparity between crime and sentence").  Thus, as a general matter,

> one could argue without fear of contradiction by any decision of [the Supreme]
> Court that for crimes concededly classified and classifiable as felonies, that is,
> as punishable by significant terms of imprisonment in a state penitentiary, the
> length of sentence actually imposed is purely a matter of legislative prerogative.

*Rummel v. Estelle*, 445 U.S. 263, 274 (1980); *see Harmelin*, 501 U.S. at 962-65 (Scalia, J.);

*id.* at 997-1001 (Kennedy, J.).

More recently, the Supreme Court again considered the proportionality issue under the

Eighth Amendment, resulting in a split similar to that reached in *Harmelin*.  In *Ewing v.

California*, 538 U.S. 11 (2003), a three-justice plurality reaffirmed Justice Kennedy's approach

in *Harmelin*, concluding that the Eighth Amendment contains a narrow proportionality

principle which forbids sentences which are grossly disproportionate to the offense.  *See id.*

at 23-24 (opinion of O'Connor, J.).  Justice O'Connor was joined in this position by Justice

Kennedy, who had authored the plurality opinion in *Harmelin*, and by Chief Justice Rehnquist,

who in *Harmelin* had joined Justice Scalia in concluding that the Eighth Amendment contains

no proportionality requirement outside of the capital sentencing context.  Justice Scalia, now

joined by Justice Thomas (who was not on the Court when *Harmelin* was decided), reaffirmed

his view that the Eighth Amendment contains no proportionality guaranty. *See id.* at 31-32

(opinion of Scalia, J.); *id.* at 32 (opinion of Thomas, J.).  Justice Stevens likewise reaffirmed

his view from *Harmelin* that the three-factor test of *Solem* guides the proportionality inquiry

under the Eighth Amendment.  Justice Stevens was joined in this view by Justice Souter, who

had joined the plurality opinion of Justice Kennedy in *Harmelin*, as well as by Justices Ginsburg

and Breyer, who were not on the Court when *Harmelin* was decided.  *See id.* at 33-35 (opinion

of Stevens, J.); *id.* at 35-37 (opinion of Breyer, J.).

Thus, although the particular Justices attached to each position have changed

somewhat, the numbers and rationales in *Ewing* break down precisely as they did in *Harmelin*.

Thus, for purposes of habeas review, the Sixth Circuit's analysis of *Harmelin*, in which this

Court asks only whether the sentence is grossly disproportionate to the offense, *see Coleman

v. DeWitt*, 282 F.3d 908, 915 (6th Cir. 2002); *United States v. Baker*, 197 F.3d 211, 217 (6th

Cir. 1999), remains controlling under *Ewing*.

2.    *Analysis*

Here, the "threshold comparison" of petitioner's crime and the sentence imposed does

not "lead[] to an inference of gross disproportionality," *Harmelin*, 501 U.S. at 1005, and thus

the Court should conclude that petitioner is not entitled to habeas relief on this ground.

Petitioner was sentenced to a term of 6-15 years' imprisonment for assault with intent to

commit murder involving a stabbing, under a statute allowing for a sentence of up to life

imprisonment.  This sentence is not grossly disproportionate to the offense, and thus does not

violate the Eighth Amendment. *See Martin v. Jamrog*, No. 01-CV-74160, 2002 WL 31008956,

at *5 (E.D. Mich. Aug. 30, 2002) (Cleland, J.) (upholding sentence of 100-150 months for

24

conviction of assault with intent to commit great bodily harm less than murder); *Bryant v.*

*Yukins*, No. 01-CV-70657, 2001 WL 1218778, at *3 (E.D. Mich. Aug. 17, 2001) (Tarnow, J.)

(upholding sentence of 22-60 years for conviction of assault with intent to commit murder,

notwithstanding that petitioner was a first time offender with a history of mental illness).

Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this

claim.[4]

G.     *Conclusion*

In view of the foregoing, the Court should conclude that the Michigan Court of Appeals's

resolution of petitioner's claims did not result in a decision which was contrary to, or which

involved an unreasonable application of, clearly established federal law.  Accordingly, the Court

should deny petitioner's application for the writ of habeas corpus.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United*

*States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues

but fail to raise others with specificity, will not preserve all the objections a party might have to

---

[4]To the extent that petitioner relies on the Michigan proportionality rule established in *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990), his claim is one of state law not cognizable on habeas review.  *See Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.).

this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Paul J. Komives

PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: January 28, 2005